We have here a motion in an action, made by a stranger thereto, which could have been denied on that ground alone, resulting in an order from which the mover has not appealed, but is brought before us by a party who did not apply to the court below for the relief refused, and does not appear in any manner to have been aggrieved by the refusal to grant it. He has no right to a review of the order under such circumstances, and the proper course is to dismiss his appeal.

Appeal dismissed, with $10 costs and disbursements. All concur.

(89 App. Div. 266.)

QUINLAN v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. BRAKEMAN—INJURY FROM LOW BRIDGE—CONTRIBUTORY NEGLIGENCE.

Evidence that a brakeman killed by a bridge while passing under it on a train had repeatedly passed under it on trains for a considerable length of time is admissible on the question of contributory negligence.

2. SAME—NEGLIGENCE.

Though, after a brakeman on a train was killed by a low bridge, it was found that a strand of the telltale signals was missing, leaving a space 12 inches wide, this does not show negligence of the railroad company; there being no evidence of how long the strand had been missing, or that deceased passed through the opening made by its absence.

Goodrich, P. J., and Hooker, J., dissenting.

Appeal from Trial Term, Dutchess County.

Action by Jennie Quinlan, administratrix of William J. Quinlan, deceased, against the New York, New Haven & Hartford Railroad Company. From a judgment on a verdict for defendant, and from an order denying a motion for a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Robert H. Barnett, for appellant.
Walter C. Anthony, for respondent.

WOODWARD, J. Plaintiff's intestate was a brakeman on one of the freight trains of the defendant, operating between Fishkill Landing and Boston, and is supposed to have been killed by coming in contact with a low bridge located in the vicinity of Wicopee Junction, N. Y. The negligence of the defendant alleged in the complaint is that the defendant did not "provide, at the time and place aforesaid, a reasonably safe place for decedent to work in the discharge of his duties while passing under the aforesaid bridge, and in failing to provide, maintain, and keep in proper condition necessary, sufficient, and suitable warning signals or telltales at the western approach to the aforesaid bridge," etc. Although, upon a careful reading of the evidence, we have been unable to find any evidence from which the inference might properly be drawn that the plaintiff's intestate exercised any degree of care on the occasion, the learned trial court permitted the case to go to the jury upon the question of

the location and sufficiency of the telltale signals designed to warn brakemen of the approach to low bridges; and that body has found that the evidence failed to show negligence on the part of the defendant, or absence of contributory negligence on the part of plaintiff's intestate. At least, their verdict was one of no cause of action, and it must be assumed that they found the facts against the plaintiff's theory. The plaintiff appeals from this judgment, and urges error on the part of the learned trial court in permitting a witness to answer the question: "During that time, had he passed backward and forward under this bridge?" The objection raised was that the question of plaintiff's intestate's acceptance of the risks of the employment was not pleaded, and that evidence tending to show that the plaintiff's intestate knew of the bridge was not within the issues. Assuming that this is the law—that the defense is an affirmative one, to be pleaded and proven (see Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 469, 63 N. E. 541)—yet the answer to the question bore upon the contributory negligence of the deceased, for, if he knew that the bridge was there, as he must have known if he had repeatedly passed over the road a considerable length of time before the accident, he would be charged with a higher degree of care than would have been expected if this had been his first trip over the line. His contributory negligence was an issue in the case, and the degree of care he was called upon to exercise depended in some measure upon his knowledge of the dangers to be encountered; and this entirely independent of the acceptance of the risks of the occupation. But in submitting the question of the defendant's negligence in reference to the telltale signals to the jury, the learned court obviously determined, as a matter of law, that there had been no acceptance of the risks of the employment on the part of the plaintiff's intestate, so that there could have been no prejudice in the admission of this evidence, even though it be conceded to have been erroneously in the case.

We are of opinion that the learned trial justice, in refusing to permit the jury to speculate upon the possibility of the plaintiff's intestate passing between the ropes of the telltale without being hit by them, was well within the law. The evidence most favorable to the plaintiff was that after the accident it was found that one strand of the telltale was missing, and that this left a space of about 12 inches, through which it was contended the plaintiff's intestate might have passed without receiving the warning for which the same was designed. There was no evidence that this strand had been out long enough so that it was the duty of the defendant to know of the fact, and to correct the error; no evidence that the intestate did in fact pass through this opening. The case presented only the possibility that if the deceased had been standing in exactly the right spot, and under exactly the right conditions, he might have passed through without being touched; but it must be obvious that a man of average size could not, under any ordinary circumstances, pass between dangling ropes 12 inches apart and not be touched by them, and the evidence did not warrant permitting a jury to speculate upon the possibilities.

The exception to the refusal of the court to charge "that the undisputed evidence shows that Quinlan, when last seen alive that morning, was on the tank of the engine," is without merit. It is not the province of the court to charge facts, but to instruct the jury in the law. The court, in refusing to charge, said:

"I have already told them that—that one witness said so, and others saw him elsewhere. I will not assume to say where he was, because that must be for the jury."

This was obviously proper, and the exception to the charge presents no question entitling the plaintiff to a reversal of the judgment.

The judgment and order appealed from should be affirmed, with costs.

HIRSCHBERG, J., concurs. JENKS, J., concurs in result. GOODRICH, P. J., and HOOKER, J., dissent.